and just take time to get yourself settled and let me know when you're ready. Mr. Robertson, glad to hear from you when you're ready.  My name is Greg Robertson. I'm here on behalf of Huntington Ingalls. And I have just sat through the argument. And so have we. Yes, sir. And our issue one is identical. I find myself in the unenviable position of arguing with an esteemed federal court judge about the meaning of a case that he participated in. And that is Lundy. But I have no choice but to do that on behalf of my client. I would respectfully disagree with Judge Hamilton. I think Lundy is directly on point. I think the words used by Judge Wilkinson in Lundy are clear. And they basically say that when the panel uses the words enforcement denied, with no qualifications and no exceptions, it means enforcement denied. Do you look at the facts that were present in Lundy? Do you look at that? No, sir. You don't look to the facts of the case to understand the language in the mandate? In the mandate, in that instance, the answer in the Fourth Circuit, Your Honor, is no. Because the way the National Labor Relations Act is framed and the way the statutory scheme works, the Supreme Court in Eagle Picture made it clear that it's not the same as in the Exxon case cited by the board. The administrative proceeding and the judicial proceeding are merged into one. No, no, no. My point is, I don't know that I agree with you don't look to it. Don't you have to look to the facts of the case to understand what the mandate is? Your Honor, I don't think you have to look to the facts of the case or anything else to understand the words enforcement denied. I know this. So in other words, do you ever look to the facts of the case in any circumstance to understand the mandate? Yes, sir. I suspect that you do. But you never do it in these cases? No, no. I don't mean to say that, Your Honor. What I mean to say, when the panel is abundantly clear about what they're saying as they were. I know that. But can't there be what they're abundantly clear on? That's placed in the context of what they're addressing, isn't it? Well, Your Honor, I think with Lundy right smack in front of the panel when it made its decision, I would say in the context of Lundy, that answer is no, Your Honor. They had the words enforcement denied. I'm going to. Does it matter at all if, in fact, the mandate in a case, as in Lundy, comes in a case where there had, in fact, been a normal merits determination in a case versus one where there is no merit determination? No, sir. Because I think the court. Yes, ma'am. Or in Lundy where there was a valid decision by a board with a quorum versus here where there was no real no merits determination because no quorum? Judge Thacker, I appreciate that I seem to be in a difficult position, but, again, I think the answer is no, and I think Eagle Picture answers that. Eagle Picture says you can't split the verdict. It says that the act does not contemplate that the decision by the court is half final, half unfinal, and half going back to the board. There's a specific language in Eagle Picture from the Supreme Court saying these particular decisions under the NLRA cannot be parsed that way, and that's why that can't be. The question is don't you have to be informed as to what these decisions are? Isn't that what you have to be informed on that? You can't. Honestly, I know this is a tough situation. As I suggest, it comes from the board acting in a way or somebody deciding to act in a way that everybody kind of looks at it and decides it's clearly unconstitutional, and now we're all dealing with sort of the aftermath of that. But I just, and I'm about as textualist a judge as you can find in the country, and I just, I think it's absolutely wrong that you say you look at the text or the objective reading of something and you just look at the word. That's never the standard. You look at the word in the context of the rest of the order and in the context of the procedural posture of the case, and it strikes me that whether or not someone wants to draw it, that Lundy case, as I read it, there had been a determination on the merits, and the court is making it clear through Judge Wilkinson, that once it's made, the board is made and the board can't revisit it. Once it's made and we have decided, a court has decided on that determination, that to me seems fairly clear from Lundy. But you say that it's not that clear. Your Honor, I don't think it's that clear, but I think even if it was that clear, Eagle Picture makes it more clear because it's a Supreme Court. You speak loudly enough, you might push that back. No, no, no. I'm glad to hear you. You might want to either lean back or else just push it forward, whatever you're more comfortable with. Yes, sir. I think Eagle Picture, however, answers the question by saying you can't split the decision of the court, that enforcement denied means enforcement denied. Yes, sir, Your Honor. Let me remind you that in our prior panel opinion, because the board was improperly constituted, we vacated both of the board's decisions in Huntington and in Enterprise. Now, when something is vacated, to me, that contemplates further action, further authority. Excuse me. Go ahead. Yes, sir. Yes, sir, I understand the court's position, and my only response to it is, Your Honor, that in light of Lundy, in light of your decision in Lundy where you said, for example, quote, while the board contends that our decision constituted some form of remand, i.e. enforcement denied, nowhere in our opinion did we so indicate. In light of Lundy, Your Honor, when you had twice before you in our case, twice, not once, as opposed to Enterprise, a request for remand, twice the board, twice the court decided not to remand the case, once in the underlying case. In our case, as opposed to Enterprise, the board did ask for remand in the underlying case. It then asked for it in rehearing. In both cases, Your Honor, the Lundy decision was right in front of the court. The whole point about enforcement denied, as interpreted by Judge Wilkinson, was right in front of the court when the NLRB asked you twice to remand it and twice you said no. And so, for example, Judge Hamilton, when you made the comment in the last argument about why Enterprise didn't challenge your underlying decision, I suspect the reason they didn't is the same reason we didn't. Because you said enforcement denied, you nowhere gave any indication that this case was to go back to the board and the law in this circuit by your Lundy case says if that's the case, then the board has no jurisdiction. Therefore, there's no reason for us to challenge what you did. But there was the facts of the case were talked about in the last decision. Do you think that was for what? Well, Your Honor, if... He thought that was... Why were the facts even discussed in the last decision? Well, Your Honor... There was some indication that at some point the facts appeared to be correct, but it's just the procedure was incorrect. The facts were talked about in the last case because the court had to go over that and decide what to do about those facts before it could reach the constitutional issue. That's why the court did that. But I would say to you, Your Honor, and I'm not trying to... Excuse me, Judge Hamilton. Well, I was just going to say I'm not going to repeat my dissertation of what Lundy Packing stood for. I disagree with your interpretation of Lundy Packing as I made earlier in the case of Enterprise. Yes, sir, I appreciate that. And as I say, I'm in an unenviable position. But I do submit to the court that the words enforcement denied are literal. They don't require construction. They don't require interpretation. And I would also say the one difference here is in our case, that is, in Huntington Ingalls' case, the board did ask for remand, and it was rejected. And it was consciously rejected by the court, both in the underlying decision and on remand with a dissent. Do you think that makes it a difference with Enterprise because? Well, I think it's a difference because, like any other decision, it constitutes the law of the case. The issue was presented, it was briefed, and it was decided. And it may not be the law of the case on a petition for rehearing, although I would suggest that in this case, because it was one discrete issue, one brief, one procedural issue, that carries more weight than maybe the ordinary petition for rehearing. But it was raised in the original case and decided in the original case with no remand. So that's why I would say that's the one difference between the two cases. But, again, Your Honor, I think if you go back to Eagle Picture, it tells you that you have to look at one consolidated decision. What do you think our court did when it talked about the facts with a basic approval? And then it said we've got to reach the constitutional issue, and it's not constitutional. What do you think this court was doing? I still go back to my previous question. You think that we just said that the board is unconstitutionally constituted and therefore what? They can't redo what they've already tried to do improperly? How do you take that? I know you're hanging on those words, but it just doesn't seem to make, in the context of what happened, the court looked at the facts as determined by the board. There was challenges to that. There was a discussion about that. The court said, basically, I'm just summarizing. Those facts are right, but I've got to tell you, board, you can't act. It's unconstitutional what you did. We want to make that clear. Then under your reading of mincing that fine and parsing that fine word, then it is unconstitutional, and because it's unconstitutional, everything else you did means nothing. That's what the net effect is. Well, Your Honor, and I would be getting ahead to the next part of the argument, but the answer is that that is going to be quite candidly yes, in that if you decide the board has jurisdiction to re-decide this case, then I think our client has a right to re-challenge the merits of what they decided as a whole new case, not in light of the decision you made the first time. If they get a re-do, we get a re-do, and the re-do on the merits is what we'd be entitled to. And you re-do and you brief, too, don't you? Yes, sir. So you do get a re-do. But, I mean, so I don't think in all respect to Judge Hamilton, Judge, and I apologize, I'm sorry to keep arguing with you, but I don't think your original panel decision is binding on this court if you decide that the board gets to go back and do it again, and if that's what you decide, then I think you have to look at the merits all over again, albeit I understand you might defer to your old opinion, but it's not binding on you. We don't have to defer to our old opinion to do it. Aren't the facts before us? Yes, sir. You don't have to defer to the old opinion at all. You don't have to defer to anybody. I agree. I'm just saying you're not bound by that old opinion to stick with it. I think you can make an entirely different opinion on the merits if you get that far, and we would urge that you do that. Right. Well, as I mentioned earlier, we vacated the board's decision in both the Huntington and the Enterprise case. Now, I find very persuasive the Whitesell case out of the Eighth Circuit and the Doomsday Trading Company out of the Second Circuit. There they authorized the board to go back without a remand, to go back and decide the cases again. Now, what do you say to that? Your Honor, I think in Doomsday that's exactly what the court did, which is different than what the court did in this case. In that case, the court in the text said that it anticipated that the board would go back and re-decide the case in light of its principles. It made that clear that that was up to the board. That's different than what happened here. In Whitesell, yes, Whitesell says what it says. I would say that the court's subjective view of its mandate is contrary to the Supreme Court case cited by Enterprise. It was a subjective, not objective view. But the other part about it that we'd say is, Your Honor, I can't deny that the Eighth Circuit did what it did. It didn't cite Lundy. It didn't cite Eagle Picture. It barely cited the statute, contrary to a decision of its own court. We suggest it's not authoritative. Will it assuage your feelings on this if we were to go back and look at what we did and say, looking at it objectively, this is how we read it, that the board does have authority to revisit? Would that assuage your procedural concerns? Well, Your Honor, I think you might say we were wrong, but we used the standard you want us to use, right? Your Honor, I guess if I could answer the question this way. Sure. If you do that, if you say enforcement denied really didn't mean enforcement denied. It meant something else. No, we wouldn't say that. That would be the effect of what you'd be saying. No, no, no. I didn't ask how you would read it. All right. I said we would say there's two different things. And we could easily say, looking at that mandate, looking at it objectively in light of the facts of the case, it's clear that. That would apply the proper standard. You might not like the way we applied the standard, but that would be the proper standard being applied, wouldn't it? Which is your argument. If that's what the court does, yes, sir, and I would tell you that. That would suffice to meet your concern about objective, subjective, and what the proper standard is. You could still disagree with the result applying the objective standard, but that would assuage any concern about the improper standard being applied, wouldn't it? Well, Your Honor, I would say if you do that, I understand that, and I guess the answer to that is yes. And I think what you'd be telling every practitioner in front of you is that when you make a decision and you say enforcement denied, for example, you don't mean what you say. You might mean something else. I disagree with you on that, if you'll allow me to. They would then read the case law like a good lawyer like you are, and you would know that when those terms are used, it doesn't mean what you think it is, but you have to look to context, and in context, you have to see what does make sense. That's all it would do. Well, Your Honor, Your Honor, you're wiser on that than I am. I don't know about that. You know, I might get part of the last word on that. Well, you'd clearly get the last word, Judge. But I'll take your compliment anyway. All right. Anything else, Judge Adams? Before you sit down, I hope I haven't been too hard on you. No, sir. You did your client a very valuable service. You presented a very fine argument, and I congratulate you for it. Thank you, Your Honor. And I apologize for the awkwardness of the situation.  And I would note your workplace called Judge Hamilton wise about six times. Yes, sir. Thank you, Your Honor. I see my time is up. And you'll be back with us for a few minutes. Yes, sir. Okay. Thank you. Thank you very much. Ms. Beard. I'm back. Nice to see you. Nice to see you again. Okay. Again, addressing the issue of the board deciding the case anew, I'd like to make a few points in response to Mr. Robertson. Okay. And the first point, I'll take a step back as well. The first point is regarding Lundy. We've talked a lot about Lundy, and I won't belabor the point other than to address Eagle Pitcher. Eagle Pitcher, Lundy, W.L. Miller, the SEIU case, all of these cases are distinguishable from the situation we have here for the same reason, which is that in all of those cases, there was a real finality concern to the board being able to go back and put more into an order that it had already gotten enforced or to have a second crack in an order that it had been denied because of the merits. And what we have here is a case where that did not take place. And so to the extent that Eagle Pitcher has language about the board not entitled to having its order split, some enforced, some of it not enforced, that is in a completely different context. And so that is the context where there was a valid board order to begin with. So that would be my first point. My second point would be with regard to ---- Let me stop and say, and you think you can find that from the context of looking at the facts that underlie the decision, right? That is correct. The teaching of the cases on how a mandate is read is that it is read in conjunction with the entirety of the judgment and the opinion. And contained in the opinion are the facts. And so, yes, when read reasonably and equitably, which, thank you, Your Honor, this is my next point, that is what the enforcement denied in the context of this case meant. And so in terms of what would happen if it did not, if the mandate was to say that there was no ability of the board to go back and decide the case anew, these would be the only cases, then, whereby the parties would not be entitled to a decision in the first instance by a validly constituted board. And so that is why when read in context of not just the opinion but the facts as well as what other courts around the country have done and the equities, the reading of this mandate is that the board was able to go back and decide the case anew. The next point that I would make with regard to the remand and requesting remand and Lundy, in this case the board, for the purpose of the unfair labor practice, did not ask if we lose on the recess appointment issue, we should get the case remanded. That was done because the board feels that since White Cell after new process, a request for the equitable remedy of a remand is not required when we're in this context of a board being told that it was improperly constituted. And that does not preclude what happened here, which is the court deciding that it did wish the board to decide the case anew. And that is because there was no valid case on the merits. And so that is why we think that under the read of the mandate, under the teachings of White Cell, and under the teachings of what has happened since Noel Canning and new process around the country, that the board was correct in deciding the case anew and incorporating the facts of its old decision into this decision and giving the parties, including my opponent, what they deserve, which is a valid board decision on the merits for this court to review. Thank you very much. You've made other arguments, so you rest on your brief on everything else. Yes, we do. And we've read them. Thank you very much. Mr. Engelhardt? If it pleases the court, my name is Robert Engelhardt. I was going to talk about the merits of the case, but the customary role for the board is to talk about the merits after the respondent has a chance to raise its concerns about the merits. Well, you're here now. You better say what you want to say. And you've also said a lot in your brief. Okay. So we have that. And I don't know how much more you need to say. Okay, I'll just make it short. In this redo, the board's facts are the board's facts. The board has adopted its facts before. I would highlight for the court that the Huntington-Engels challenge to those facts is more narrow this time than it was before the court before. They've given up a challenge to the board's technical employee TRW car line of cases. They read this court's earlier decision. On page 37 of their brief, they do not ask this court to go back and redo or reverse that. They're living with that. Instead, they're mounting a whole separate challenge that the board's specialty healthcare decision was wrong. We've pointed out that they didn't raise that in a timely way in the board's procedures. We've pointed out that they didn't even preserve that in their brief, just alluding to it. And as a practical matter, where would this challenge even get them? It would get them to the law before specialty healthcare was written. And when that law was the case, as it was in this case in front of the regional director, they did not ask for the regular community of interest standard to be applied to this determination. They asked for TRW car line of cases, which the board did and which they've now given up on. That is their best standard for trying to say this unit was bad. The board has rejected it. This court has rejected it. And there's no basis for overturning that now. You make a little argument on the merits, but did I hear you argue waiver first? Well, there is the point that they're brief. I'm just saying, but it seems to me that they've been arguing that against you to this point. But at any rate, we heard you. We heard deceptive argument. I don't see any questions and you rest on your brief. And we have the argument you made there. And we thank you very much. Thank you. Mr. Robertson. Your Honor, let me turn briefly to the merits. We're not living with the decision that the panel made on the merits, as I indicated earlier. If this court allows the board a redo, then we suggest to the court that it is in time that there's a redo of the entire thing, including the merits. One.  And the reason we suggest that not only can the court do that, but it ought to do something different than the old panel did, is because with all due respect, the old panel decided this case reviewing it under the TRW standard that we submitted then and submit now is not the standard the board uses to decide bargaining unit questions. It uses specialty health care. We submitted a case in a 28-J letter just a couple of weeks ago, again, confirming that where the board made this statement. The board's decision in specialty sets forth the principles that apply in cases like this one in which a party contends that the smallest appropriate bargaining unit must include employees or job classifications not requested in the petition for unit. That is exactly our case. The board filed a petition. I mean, the union filed a petition for a certain group of employees. The employers sought to add to them. Specialty is the standard. It is not TRW. We are not asking the court to go back to TRW because specialty then and the cases we've cited since then, including DPI now, have proven that specialty is the law according to the board, not TRW. It's not a matter of saying, well, one alternative is worth it or another. Deciding a case based on overruled law is not an appropriate way to deal here. If the labor board applies specialty and this board reviews specialty in light of Lundy, it will find that specialty is a change, number one. Number two, conflicts with Lundy and won't pass muster in this circuit. At that point, it's up to the court to remand it to the board to say that standard that you've put out here doesn't cut it in our circuit. That's exactly the case that we have. Now, to go back and say, as Mr. Englehart did, that we have punted on TRW, yes, we have because the board has punted TRW. The board we submitted earlier had done it. They clearly have done it now. Specialty we submit to you and we briefed it was a change in the law. It was a change that they provided without explanation that was required by Virginia Folding Box, and it's a change that violates the law in this circuit anyway, and we thank the statute. But this circuit, as according to Lundy Packing once again, the overwhelming community of interest standard was found in Lundy Packing not to be consistent with Section 9C5 of the Act. That is where this case should come out if the board gets that far, and we submit that the panel should, if it allows the board to proceed, go forward and review it under specialty health care. Well, let me ask you a question. Yes, sir. In the prior decision, your client claimed that the prior case, that the TRW care was the appropriate care, the appropriate law. Isn't that right? Yes, sir, we did. All right. And didn't you lose before the board on the TRW care standard? Well, yes, we did, Your Honor, because the – well, we did, Your Honor, but the reason we said TRW was the law is because it had been on the books for 50 years. But what the board did was it decided its specialty decision two years after the record in our case was closed. So, frankly, for the board to come tell me I've waived the right as the ambugee to challenge the ambugeur is ironic indeed. But that's what they did, and then they applied specialty to us and then they said alternatively, under the TRW standard, which we say they overruled sub silencio then and they've clearly overruled now, we say that it passes muster under TRW. Our argument is – and the court then reviewed it on TRW, deciding not to look at it under specialty. We say, Your Honor, that that TRW case is no longer good law, according to the board, so it's no longer the appropriate thing for this panel to do to review a decision made under TRW. We're not suggesting that TRW will be the board's law if you send it back to them. They have to decide what their law is. They've decided its specialty. We contend that doesn't cut it in this circuit. We suggest that if you review it, you will conclude the same thing, pursuant to Lundy-Packing, and not institute your own standards, but say to the board, the ones you've instituted are no good in this circuit. Tell us what else you want to do. It may be TRW. It may be something else. I can't predict. But what I do know is specialty is the standard they're applying. I'm going to stop you at this point because we did get out of order on the merits and we've gotten to it. I'm going to do something a little unusual, and that is, Mr. Englehart, I'm going to give you two minutes to come up and argue in response, and then I'll give you the last word, another minute or so. Okay. Just so we can, because you've now joined the argument a little bit better than they'd presented it, and it was a little unusual the way we've been proceeding. I'm just going to do that way. And, Mr. Englehart, I'll let you out. You'll be back up again for a minute. Thank you. Mr. Englehart, let me give you not more than two minutes to respond to that argument on the law and the merits, which is what I take you wanted to do anyway. I appreciate the opportunity, Your Honor. The DPI SECU print case that they submitted, if anything, the citation to Northrop Grumman, which is the name of this case before it was funded in Engels, reaffirms the fact that the Board continues to acknowledge that the TRW CAR line of cases is alive. They have gotten an application of that line of cases. That is the hardest standard to meet, to make a unit smaller than all technical employees. They asked for that application before the Board. They got it. It's unforeseeable to me, Your Honor, how they could possibly win under any other standard. This attack on specialty is asking this Court for an advisory opinion in all due respect. If specialty is taken off the map, we return the state of the law to a community of interest standard, which was much more difficult, much easier to find a smaller unit of technical employees than all technical employees than TRW CAR. That's why they argued TRW CAR. They had a choice then. They could have argued regular community of interest. Now their complaint is specialty has come along, which made it even easier. Well, maybe it has, Your Honor, but it hasn't been applied to them in a way that gives them the hardest test to find a smaller unit, TRW CAR, and the Board still found the smaller unit appropriate. There's no reason to disturb that. Even if the Board in the future were to leave TRW CAR behind, they got the benefit of the best test at the time they litigated it before the Board, and, Your Honor, I submit the best test now for their position. Thank you, Your Honor. Thank you very much. Let me give you a minute. Mr. Robertson, thank you very much. We kind of got you out of order a little bit. Thank you, Your Honor. Your Honor, all I can tell you is I've done this for 40 years. I know what the standards are this Board applies. Specialty is new. It's different. It is the standard they are applying across the Board in every instance. They are not applying TRW. What they are telling you is a fiction. They didn't want you to review specialty because you already had Lundy on the books. They conflict. So they decided it alternatively under a standard that they have overruled and they have discarded. And for you to once again fall into that trap is putting yourself in a position of not really analyzing the case and reviewing the case that they decided. Well, we try very much not to fall into the trap. Yes, sir, and I appreciate that. And I'm trying to warn you against that. You're trying to snare us, but you want us to avoid that. I want you to avoid the trap. But if you get this far, I want you to be able to say we reviewed it under the standard that they applied and DPI tells you that's the standard that they apply to a case exactly like this. Okay. Thank you. Thank you very much. We will recess for a short recess and then we'll step down to brief counsel. And we'll reconstitute the court for the following hearing. Thank you very much.
judges: Dennis W. Shedd, Stephanie D. Thacker, Clyde H. Hamilton